**Dated: February 2, 2023**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BARTLEY INDUSTRIES, INC., | ) | Case No. 21-12565-SAH |
| | ) | Chapter 11 |
| Debtor. | ) | |

### ORDER DENYING MOTION FOR ORDER TO SHOW CAUSE WHY BARTLEY INDUSTRIES, INC., SHOULD NOT BE HELD IN CONTEMPT, AND NOTICE OF OPPORTUNITY FOR HEARING [DOC. 309]

On January 12, 2023, David Sisson ("Sisson") former counsel for debtor, Bartley Industries, Inc. ("Debtor"), filed his Motion for Order to Show Cause Why Bartley Industries, Inc., Should Not Be Held in Contempt, and Notice of Opportunity for Hearing [Doc. 309] (the "Motion") seeking an order pursuant to 11 U.S.C. § 105(a): (i) requiring Debtor to appear and show cause why Debtor should not be held in contempt; and (ii) for an award of attorney fees and costs incurred in enforcing the Court's order. Although Debtor failed to respond, the Motion will be denied for the reasons below.

**FACTS**

The following facts are taken from the Court's docket[1] and the Motion:

1. On September 25, 2021, Debtor filed a bankruptcy petition seeking relief under Chapter 11, Subchapter V of the Bankruptcy Code.

2. On June 16, 2022, after attempting unsuccessfully to propose a confirmable plan five times, Debtor filed its Fifth Amended Plan. The long pendency of the case and inability of Debtor to propose a confirmable plan led the United States Trustee ("UST") to file its Second Motion to Convert or Dismiss Case, with Brief, Notice of Opportunity for Hearing, and Notice of Hearing [Doc. 249] (the "UST's Motion to Convert or Dismiss"). A hearing was set for August 9, 2022, to consider confirmation of the Fifth Amended Plan and the UST's Motion to Convert or Dismiss (the "August 9, 2022 Hearing").

3. The day before the August 9, 2022 Hearing, the Court was advised by the attorney for the UST that Sisson would not be appearing due to illness and intended to withdraw as counsel for Debtor. At no time did Sisson contact the Court to advise of his illness or inability to appear on behalf of Debtor.

4. At the August 9, 2022 Hearing, confirmation of the Fifth Amended Plan was denied. The UST's Motion to Convert or Dismiss was continued to September 14, 2022, to allow Debtor to find new counsel.

---

[1] It is well established that a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases. Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Investments, 2017 WL 650132, at *2 (W.D. Okla. Feb. 16, 2017).

5. Sisson filed his Motion for Leave to Withdraw as Counsel with Notice of Opportunity for Hearing [Doc. 283] on August 29, 2022, nearly three weeks after failing to appear at the August 9, 2022 Hearing.

6. The case was dismissed by agreed order [Doc. 290] on September 13, 2022.

7. Following dismissal, the Court entered its Order to Show Cause Why Disgorgement Should Not Be Ordered [Doc. 297] directing Sisson to file an application for compensation no later than October 27, 2022.

8. On October 25, 2022, Sisson filed his Motion of Counsel for the Debtor in Possession, for Allowance of Final Compensation and Reimbursement of Expenses, with Brief in Support, and Notice of Opportunity for Hearing [Doc. 299] requesting approval of $58,510.00 in fees and $4,264.83 in expenses to which the UST objected.

9. An Agreed Order Authorizing Final Award of Attorney Fees and Expenses [Doc. 306] (the "Fee Order") was entered on November 29, 2022, approving a reduced fee of $35,106.00 and reimbursement of $4,264.83 in expenses. Specifically, the Fee Order provides: "[Debtor] is authorized and ordered to pay attorney B David Sisson, compensation and reimbursement of expenses totaling $39,370.83." Fee Order, 2.

10. Sisson made written demands on Debtor for payment of his fee on November 30, 2022, and December 7, 2022, to which Debtor did not respond. Motion, 2-3.

## CONCLUSIONS OF LAW

Sisson now seeks an order requiring Debtor to appear and show cause why Debtor should not be held in contempt until all compensation and reimbursement set forth in the Fee Order is fully paid and ordering Debtor to pay all attorney fees, costs, and expenses incurred in enforcing

the Fee Order. Following dismissal of the bankruptcy case, professional fees are more appropriately collected in state court. Accordingly, the Court will abstain, and Sisson's Motion will be denied.

### I. JURISDICTION

The Court undisputably has jurisdiction over fee applications after dismissal. "The Tenth Circuit has held that bankruptcy courts retain jurisdiction after case dismissal over pending 'core proceedings,'" and "[a]llowance of professional fees is a 'core' proceeding." In re Salazar, No. 15-13194 TS13, 2016 WL 7377043, at *3 (Bankr. D. N.M. Dec. 19, 2016) (first citing Johnson v. Smith (In re Johnson), 575 F.3d 1079, 1083 (10th Cir. 2009) (bankruptcy court retained jurisdiction to hear "core" adversary proceeding after dismissal of the main case); then citing Smith v. Commercial Banking Corp. (In re Smith), 866 F.2d 576, 578 (3d Cir. 1989) (to the same effect); then citing Fidelity & Deposit Co. of Maryland v. Morris (In re Morris), 950 F.2d 1531, 1534 (11th Cir. 1992) (same); and then citing 28 U.S.C. § 157(b)(2)(A) and (B)). However, "[c]ollection of allowed professional fees from the debtor is not a core proceeding." Salazar, 2016 WL 7377043, at *4; see also 28 U.S.C. § 157(b). Thus, jurisdiction over Sisson's collection efforts is not clear cut, and the Court must examine the extent of its ancillary jurisdiction.

"[A]ncillary jurisdiction rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety." Atlas Biologicals, Inc. v. Kutrubes, 50 F.4th 1307, 1319 (10th Cir. 2022) (citing Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir. 1982)). Under the Court's ancillary jurisdiction, the Court has "the power to conduct proceedings necessary to protect and give effect to its judgments." Atlas Biologicals, 50 F.4th at 1321 (citing Sandlin v.

4

Corp. Interiors, Inc., 972 F.2d 1212, 1216 (10th Cir.1992)).  Such jurisdiction is referred to as "enforcement jurisdiction," and "judicial power would be incomplete" without it.  Mayex II v. Du-An Prod., Inc. (In re Mayex II Corp.), 178 B.R. 464, 468 (Bankr. W.D. Mo. 1995) (citing Sandlin, 972 F.2d at 1216).  It is likely, therefore, the Court has authority under its ancillary enforcement jurisdiction to oversee Sisson's post-dismissal collection efforts.  However, for the reasons discussed below, the Court will abstain.

## II.    PERMISSIVE ABSTENTION

The Court need not determine the extent of its ancillary jurisdiction here.  Collection of the Fee Order is more appropriately handled by the state court; thus, the Court elects to abstain.  Under 28 U.S.C. § 1334(c)(1), a court may, "in the interest of justice, or in the interest of comity with State court or respect for State law, [abstain] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."  The Court "may raise permissive abstention *sua sponte*," and abstention is within the Court's sound discretion.  Salazar, 2016 WL 7377043, at *4 (first citing Gober v. Terra + Corp., 100 F.3d 1195, 1207 n. 10 (5th Cir. 1996); then citing Bricker v. Martin, 348 B.R. 28 (W.D. Pa. 2006); and then citing El Llano Co, Inc. v. Summit Investment (In re Potter), 2007 WL 1672181, at *8 (Bankr. D. N.M. June 6, 2007)).  The Court considers the following factors when determining whether abstention is appropriate:

1. the effect or lack of effect on the efficient administration of the estate if a court abstains;
2. the extent to which state law issues predominate over bankruptcy issues;
3. the difficulty or unsettled nature of the applicable state law;
4. the presence of a related proceeding commenced in the state court or other nonbankruptcy court;
5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. the substance rather than form of an asserted "core" proceeding;

8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
9. the burden on the bankruptcy court's docket;
10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
11. the existence of a right to a jury trial;
12. the presence in the proceeding of nondebtor parties; and
13. any unusual or other significant factors.

Salazar, 2016 WL 7377043, at *5 (citing In re Lunt, 2011 WL 1656404, at *1-2 (Bankr. D. Kan. May 2, 2011) (citing 1 Norton Bankr. L. & Prac. 3d § 8.6))). Factors 3, 4, 7, 8, 10, 11, and 12 are not applicable; the remaining factors overwhelmingly favor abstention.

**Factor 1: Effect on administration of the estate**

This factor weighs in favor of abstention. The present bankruptcy case is fully administered and dismissed; Sisson's collection efforts will have no impact on the administration of the estate. See In re Trigee Found., Inc., 2017 WL 2126785, at *2 (Bankr. D. D.C. May 16, 2017).

**Factor 2: Extent to which state law issues predominate over bankruptcy issues**

The Court's Fee Order authorizes and orders Debtors to pay Sisson's fees and expenses. Consequently, the Fee Order is essentially a money judgment with no bankruptcy issues left to be determined. Trigee Found., 2017 WL 2126785, at *2 ("[T]he court's direction that the fees be paid adjudicated that the debtor had an obligation to pay the fees . . . and thus, at the very least, the order comes close to being a monetary judgment."). Now that the case has been dismissed, Sisson "is implicitly left to enforce payment of the owed fees by utilizing nonbankruptcy law remedies." Trigee Found., 2017 WL 2126785, at *2.

> [T]he appropriate course of action is for the bankruptcy court to rule on the allowability of fees charged in a bankruptcy case, and

> then for the professional to go to state court to collect any unpaid fees . . . . [I]n dismissed cases, bankruptcy courts usually will have discharged their duties by ruling on any pending fee applications and entering final fee orders. ***Thereafter, the logical place for professionals to collect their allowed fees is state court.***

Salazar, 2016 WL 7377043, at *4 (emphasis added) (citing In re Sweports, Ltd., 777 F.3d 364, 367 (7th Cir. 2015)). Therefore, this factor weighs heavily in favor of abstention.

**Factor 5: Jurisdictional basis other than 28 U.S.C. § 1334**

The Court has no basis for its jurisdiction aside from 28 U.S.C. § 1334. Further, though the Court likely has jurisdiction over Sisson's collection efforts, as discussed above, the extent of such jurisdiction is not clearly delineated. This factor weighs in favor of abstention.

**Factor 6: Degree of relatedness to the main bankruptcy case**

Sisson's fees arise directly from, and were approved in, the bankruptcy case; however, the case has been dismissed, and no bankruptcy issues remain. This factor is, therefore, neutral.

**Factor 9: Burden on the Court's docket**

This factor weighs against abstention as the burden on the Court's docket would not be onerous.

**Factor 13: Unusual or significant factors**

The final factor weighs heavily in favor of abstention as the remedy sought here – contempt – is an extreme one. Trigee Found., 2017 WL 2126785, at *1 (citing Joshi v. Prof'l Health Servs., Inc., 817 F.2d 877, 879 n.2 (D.C. Cir. 1987)) (noting judicial contempt is a potent weapon that courts rightly impose with caution.). As a result of its severity, "contempt is generally not an appropriate vehicle for collecting a money judgment." Trigee Found., 2017 WL 2126785, at *2 (first citing In re Lezell, Case No. 15-00104 (Bankr. D. D.C. June 11, 2015); then

7

citing Sanghvi v. Ali (In re Ali), Adv. Pro. No. 10–10012, 2011 WL 1655578, at *2 (Bankr. D. D.C. Apr. 29, 2011); and then citing Patterson v. Am.'s Voice, Inc. (In re Am.'s Voice, Inc.), Adv. Pro. No. 00–0006, 2000 WL 33529764, at *1 (Bankr. D. D.C. Oct. 4, 2000)); Mayex II v. Du-An Prod. Co. (In re Mayex II Corp.), 178 B.R. 464, 471 (Bankr. W.D. Mo. 1995) ("[T]he Court has an extreme reluctance to impose such extreme sanctions for what is basically a failure to pay a debt. Such use of the Court's contempt power smacks too much of debtors' prison and too little of the spirit of the Bankruptcy Act.").

The Fee Order is essentially a money judgment, and contempt is not an appropriate avenue for collection. Trigee Found., 2017 WL 2126785, at *2. Even if the Court were to consider granting Sisson the relief he is seeking, the Fee Order imposes no deadline for payment; instead, it merely establishes the existence of a debt. Consequently, Debtor is not in violation of the Fee Order such that contempt would be warranted. Trigee Found., 2017 WL 2126785, at *2.

The above factors overwhelmingly favor abstention. The Court has discharged its duties on this matter by entering Sisson's final Fee Order; therefore, "the logical place for [Sisson] to collect [his] allowed fees is state court." Salazar, 2016 WL 7377043, at *4.

## CONCLUSION

For the reasons stated above, Sisson's Motion is DENIED.

IT IS SO ORDERED.

# # #